ORIGINAL

The Law Offices of Burton D. Gould, LLLC  #4775
Burton D. Gould, Attorney for Plaintiff Maurice Howard
2020 Main St. Suite 1010
Wailuku, HI 96793
(808) 269-7100

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

NOV 22 2013

at __ o'clock and 45 min. P __ M.
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI'I

| | | |
|---|---|---|
| MAURICE HOWARD | ) | D.C. No. CV13  00645 SOM |
| Plaintiff, | ) | KSC |
| vs. | ) | COMPLAINT |
| HERTZ GLOBAL HOLDINGS, INC.; | ) | (OTHER CIVIL RIGHTS) |
| HERTZ INVESTORS, INC.; THE HERTZ | ) | |
| CORPORATION AND ITS EMPLOYEES | ) | |
| SHAWN AKINA, ROSE FERNANDEZ; | ) | |
| RYAN CABEBE, VERONICA HUARD, | ) | |
| SAMANTHA CHUN AND PIA SOMERA; | ) | |
| FACEBOOK INC.; | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

## COMPLAINT

Comes now Plaintiff Maurice Howard (hereinafter "Howard"), by and through his Attorney,

Burton D. Gould, Esq. of The Law Offices of Burton D. Gould, LLLC and for his complaint

1

against the Hertz Global Holdings, Inc. (hereinafter "Hertz Holdings"); Hertz Investors, Inc.;

Hertz Corporation (hereinafter "Hertz") and its employees, Shawn Akina (hereinafter "Akina"),

Rose Fernandez (hereinafter "Fernandez"), Ryan Cabebe (hereinafter "Cabebe"), Veronica Huard

(hereinafter "Huard"), Samantha Chun (hereinafter "Chun") and Pia Somers (hereinafter

"Somers") and Facebook, Inc. (hereinafter "Facebook") states and avers as follows:

## JURISDICTION AND VENUE

1.Plaintiff is a U.S. Citizen and a resident of the town of Kahului on the Island  and County of

Maui, State of Hawai'i.

2.Defendant Hertz Holdings is a corporation organized under the laws of the State of Delaware

whose principal executive offices are located at 225 Brae Boulevard Park Ridge, New Jersey

07656-0713 and at all times mentioned in this action was doing substantial business on the Island

and County of Maui, State of Hawai'i.

3.Defendant Hertz Holdings is a top level holding company which wholly-owns Defendants

Hertz Investors, Inc., which is a holding company for hertz Holdings primary operating

company, Defendant Hertz.

4.Defendant Hertz is the primary operating company of Hertz Holdings, and is a wholly owned

subsidiary of Hertz Investors, Inc. which is wholly-owned by Hertz Holdings.

5.Defendants Hertz Holdings, Hertz Investors, Inc. and Hertz shall hereinafter be referred to as

"Hertz".

6.Defendants Akina, Fernandez, Huard, Chun and Somers at all times mentioned in this action

were employees of Hertz and were residents of the Island and County of Maui, State of Hawai'i.

7. Defendant Cabebe at all times mentioned in this action was an employee of Hertz and was a resident of the Big Island, County of Hawai'i.

8. Defendant Facebook is a corporation organized under the laws of the State of Delaware, whose principal executive office is 1601 Willow Road, Menlo Park, California  94025 and at all times mentioned in this action was doing substantial business through its users on the Island and County of Maui, State of Hawai'i.

8. All acts mentioned and complained of herein occurred on the Island and County of Maui, State of Hawai'i.

9. This Honorable District Court has jurisdiction of this cause pursuant to 28 USC Section 1332, as New Jersey is Defendants Hertz "principal place of business" for Diversity Jurisdiction.  The principal place of business for Defendants Hertz was determined by the U.S. Supreme Court in a case that clarified the test for determining a corporation's "principal place of business" in a unanimous opinion regarding Hertz Corp v. Friend 559 U.S.__(2010).  Menlo Park, Calfornia is Defendant Facebook's "principal place of business" for Diversity Jurisdiction.

10.     This Honorable District Court also has subject matter jurisdiction pursuant to Title II of the Civil Rights Act of 1964 regarding "public accommodations", such public accommodations as defined in the above mentioned Civil Rights Act Title II, and also in 42 USC 12181.

11.     Furthermore, this Honorable District Court has jurisdiction of this case pursuant to 18 USC Section 241 as well as 42 USC Section 1985 wherein a Conspiracy against Plaintiff's Civil Rights exists which have denied him freedom from discrimination under Title II of the Civil Rights Act of 1964.

12.     This Honorable District Court has jurisdiction of this case pursuant to 28 USC Section

1331 as "The district courts shall have original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States."

13.     Venue is proper pursuant to 28 USC 1391 (c) (1) because Plaintiff is a resident of the

State in the District of Hawai'i and (b)(2) a substantial part of the events giving rise to Plaintiff's

injuries occurred in the Judicial District of the State of Hawai'i

14.     On or about November 20th, 2013 Plaintiff received a Right to Sue letter from the Hawai'i

Civil Rights Commission.

<u>INTRODUCTION</u>

On or about February 27th, 2012, Akina, a location Manager for Hertz on Maui; Cabebe, District

Manager for Hertz on the Big Island in Hilo; Huard, Location Manager for Hertz on Maui; Chun,

an employee responsible for Transport for Hertz on Maui and Somers, an employee for Hertz on

Maui; posted on Facebook, a public media social networking site, an attack on Howard's race,

sexual orientation, and financial state and condition.

Further, there were also threats of bodily harm and death that were made and have still not been

retracted.  These threats were articulated explicitly as well as implicitly by innuendo.  Akina,

than a location Manager who "oversees all of the personnel and operational functions of an

airport location …" and who has "…full responsibility for one or more distinct areas of

operation", describes Howard by stating, "I seen Maurice's bougie ass walking Kahului beach

road…nigga please!"  The term "bougie" in reference to a person who is African-American is a

well known slur to depict an African-American, as a fraud, who wants to give the appearance of being in a higher class or status. In the case at bar, Howard is an aspiring entrepreneur who owns his own accounting business and is being racially denigrated for seeking to be successful in business. This term "bougie" generally references a comparison with Caucasions of a higher economic status. Akina's use of the word "ass" in association with "bougie" is also typically used to denigrate the individual further and makes clear the derogatory nature of this expression. The "N" word being used by Akina, reinforces and validates the racist and denigrating expression "bougie ass" that it qualifies. Akina then goies on to describe Plaintiff as a"broke ass faka, who act like he got plenny money" which further reinforces Akina's racist attack on Howard. Then Chun says "run that faka over!!! Lol" the statement "run that faka over!!!" is an intentional and purposeful statement which is capable of causing emotional distress in any objectively rational person. Such a statement, in addition to constituting a threat of physical violence and harm, is made more derogatory by the "lol". Moreover, such statement not only has no redeeming social value, it is clearly against the public interest. Akina's then states " ...I was tempted to, but nah, I had a white car, neva like you guys scrub the blood off." The violent imagery this puts in the mind of the reader is horrific. An unknown person then, who is not a Hertz employee, and who is reading the above referenced Facebook posting, being made to and read by an untold number of people, like himself, who has easy and available access to read these statements being made by Hertz personnel, then states" Yeah, like Samantha said, run that faka over." There is no "lol" after this statement which conveys a truly malicious threatening intent which is never questioned or repudiated by the Hertz management employees. Furhtermore, this statement creates an atmosphere which is, at the same time, racist, violent, threatening, and humiliating. Location Manager Huard, then states, "What no BMW today" and

discloses private information of an excellent, regular paying customer, while simultaneously mocking and ridiculing him; as this statement directly relates to the original racist statement by Akina. Akina responds, "Now he knows we got Mercedes, he's gonna drive those. It's too bad his CC declines all the time…" The location Manager continues his racist and derogatory statements concerning Howard, the customer, and his car rentals, and then goes on to disclose private and protected information, which misrepresents the customer, and his credit card financial status. Quite unbelievably, Ryan Cabebe, the Hertz District Manager in Hilo on the Big Island, then states "Hahahaha…he still renting huh  LOL". Cabebe, a District Manager whose responsibilities include being *"responsible for customer and employee relations" as well as to "increase market share, control fleet, meet and exceed its profitability targes, reach customer service goals, and develop staff"* and *"adhere to company policies and procedures"* does nothing to stop the racist, threatening, and demeaning assaulton Howard, but instead re-affirms it in his own words. Huard then slurs Howard's alleged sexual orientation stating "No more Troy his favorite boy though! Sorry Troy!" When a new person to the posting then asks "Maurice who?  The name sounds sooooo familiar…..hmmmm" Akina responds by stating, "He's too broke to have a last name.'

## Hertz gives Location and District Managers Apparent Authority

1.All these racist, violent, threatening, discriminatory, demeaning, derogatory and defamatory statements are made by managers and employees of the Hertz corporation, which has cloaked them with apparent authority. Hertz employees are making the above statements in a public forum, on the street corner "in the public square", as it were, before large numbers of people.  It is clearly forseeable that the underlying dialogue pertaining to Howard's rental business with Hertz and his financial condition, would be made by supervisory employees and is clearly

connected to the work of the corporation and falls within the scope of employment. There is no history of racial animosity among Howard and the aforementioned Hertz employees. This racial animosity clearly impacts the corporation and its work and this violent and discriminatory behavior is being engaged in by an upper level Hertz manager and middle management Hertz employees who are acting with apparent authority as well as acting within the scope of their employment. Furthermore, these supervisory personnel are giving approval for lower level employees to act with the same unlawful and despicable behavior towards the African-American Hertz customer, Howard. These managers and other employees were commenting on and referencing the vehicles that Howard was renting and his ability to pay for them.

2.This Facebook posting depicts a culture of racism and discrimination at the Hertz corporation. This posting depicts adverse judgment about a race and publically mischaracterizes and discloses private facts about Howard to intentionally portray him in a "false light". He is given disparate treatment, treated differently than Hertz's other highly rated regular paying customers. He is singled out from amongst the customers who are members of Hertz's gold card Presidential Circle. He is singled out and discriminated against because of his race. Racial animus is clearly present.

**Employees act with the scope of Hertz's employment pursuant to The Doctrine of Respondiat Superior**

3. For a corporation to be vicariously liable for the statements of its employees, a servant must be doing an act in furtherance of the master's business. The depicting of a declining credit card and Howard's rentals of high end vehicles, would be regarded as these employees doing an act within the scope of their employment. Moreover, it is the corporation which has cloaked these

7

employees with apparent authority, because of their supervisory position. Furthermore, the County and Island of Maui, constitutes a relatively small residential population. The Supervisory positions of three of the Hertz management employees, who actively engaged in and participated in the above mentioned Facebook posting, were well known to many people in the Maui community as well as the two lower level employees who also participated, and or commented on the Facebook posting. Furthermore, each Hertz employee had numerous friends and associates, on their Facebook site, many of whom, presumably were also in Maui, and throughout the Islands of Hawai'i, where Howard operates an accounting business, which serves over 510 persons in the State of Hawai'i and which could and did read the dialogue and communication that ensued between them. Among those "Facebook friends" of the Hertz employees, were clients of Howard's accounting business. In fact, Howard received communications from clients of his that, as a direct result of the Facebook posting, terminated their business relationship with Howard. The case of Valenzuela v. A.D.T. Sevices inc., 820 F. Supp 2d 1061 (DC.D. Cal. 2010) holds that this vicarious liability attaches to the company through the doctrine of "Respondiat Superior".

The Doctrine of Respondiat Superior is activated by the emergence of four requirements. 1)There must be employer/employee relationship between the company and the actor; 2) The employees, as in this case, there conduct must be the kind they are hired to perform; 3) The conduct occurs substantially with the authorized time and space limits and; 4) The conduct is acknowledged to, at least part, (emphasis Howard) be of a purpose to serve the master. Krause v. Turnberry Country Club, 517 F. Supp. 2d 851 (N.D. Ill. 2008)

As occurred in the case at bar, the misconduct of the employees must have been an outgrowth of the employment. If this conduct is not related to the employer's business, it is outside the scope of their employement.

**Hertz Publishes Howard's Private Financial Information**

4. The Hertz Privacy Statement states, "We will share your personal data among ourselves, our agents... to provide services to you," which services include rental cars, billing and collecting amounts owed Hertz, and processing customer transactions. Such was the dialogue by hertz management and employees at Facebook, concerning Howard's rental of cars, billing and collecting amounts owed to Hertz, and the processing of Plaintiff's rental transactions.

5. Furthermore, time and space limits are not exclusive to a Hertz site physical location. For example, as in uninsured motorist law,uninsured insurance covers the insured, whether you are in a car, walking, or sitting in your living room watching television, when you are injured by an uninsured motorist. Hertz's managers and employees, discussing the business of a regular customer in detail, as regards his rentals and his ability to pay, on Facebook, allowed Hertz employees to continue to do Hertz business, in at least in part, in service to the master.

6. In the instant case, the ability to pay for rentals and especially higher priced rentals, would clearly serve the master's purpose. Further, there was not a history of animosity and, or personal problems with the posting supervisors, employees and the preferred customer Howard. It's clear in this case, that this conduct on Facebook was business related and not the result of any personal relationship between the posting employees and Howard; which personal relationship did not exist.

**District Manager Fernandez Negligently Supervises and Discriminates in regards to her Location Manager**

7. Furthermore, and just as significantly, this despicable Facebook incident, resulted from discrimination i.e. favoritism and negligent supervision.  District Manager Fernandez's failure properly discipline Akina appropriately and sufficiently on two occasions, wherein Akina had posted hostile and harassing content on Facebook relating to a customer and Fernandez herself, the Hertz District Manager at the Airport Maui location.  Fernandez had a duty to suspend Akina, if not to terminate his employment after these two incidents and her failure to take appropriate action led to the attack on Howard . Fernandez's  demonstrated favoritism toward Akina, because Akina advanced Hertz's business interests for Fernandez, as Akina created the conditions for increased sales which was instrumental in helping Fernandez to make sales and qualified Fernandez as acting within the scope of her employment when she failed to discipline Akina properly and this gross negligence by Fernandez allowed Howard to be harmed severely.

**Facebook commits gross negligence by failing to properly supervise its networking site**

8. Facebook policy states, " We prohibit content deemed to be directly harmful, but allow content that is offensive or controversial.  We define harmful content as anything organizing real world violence, theft, or property destruction, **or that directly inflicts emotional distress on a specific private individual (e.g. bullying)."** (emphasis Howard)  Clearly the posting attacking and bullying Howard, is a prima facie case of Facebook's own definition of "harmful content".

Moreover, these same individuals, continue to have accounts on Facebook, despite  Facebook's policies which explicitly state that such "harmful content" being posted on Facebook is grounds an individual's account to be terminated.

Furthermore, Carolyn Everson, the V.P. of Global Marketing Solutions for Facebook has stated publically that "There is no place for Hate on Facebook".

The vicious racial attack by five Hertz manager and employee representative personnel, remained live on-line for approximately 24 hours and was removed by one of the perpetrators, Hertz Location Manager Akina, only after it was discovered and viewed by Howard and only after Howard had reported in to Hertz.

Facebook never became aware of the posting, wherein Howard was racially attacked and denigrated; threatened with bodily harm; defamed and libeled and his character assassinated; his private information, financial and otherwise, made public and misrepresented and slurs were made against his alleged sexual orientation.

## COUNT 1 – GROSS NEGLIGENCE

9. Plaintiff incorporates by reference paragraphs 1-8 as if fully set forth herein.

## HERTZ CREATES UNSAFE ENVIRONMENT FOR HOWARD

10. Defendant Hertz failed in its obligation to provide a safe environment for its customers by failing to prevent a total of five Hertz employees; including one District Manager, two Location Managers and two "rank and file" employees, engaging in racially assaulting customer Howard and threatening him violently with physical harm as well as disparaging, libeling and defaming Howard; his reputation and financial status in regards to his race; making slurs and ridiculing Howard's race and alleged sexual orientation; bullying Howard on-line on a public social media networking site; discussing, disclosing and misrepresenting, in a public forum, the customer Howard's car rental business and his alleged financial condition. The behavior and conduct

11

expressed by Hertz management and employee personnel against Howard, while in a business relationship to Howard as a customer, was objectively offensive, harmful, unlawful and threatening which constituted an unsafe environment for Howard.

## FACEBOOK CREATES UNSAFE ENVIRONMENT FOR HOWARD

11. Defendant Facebook, by failing to properly, sufficiently and effectively monitor and administrate its social media networking site, allowed severe harm to be inflicted on Howard, as regards threats made to his physical safety; to his mental and emotional health and well being; to his character, personal and business reputation; to his lawfully protected private information; all of which has never been investigated or acted upon by Facebook. Nor has Facebook acknowledged the vicious assault on Howard or taken any action to prevent this kind of attack on Howard in the future. The individuals who participated in the Facebook posting attacking Howard continue to have Facebook accounts after violating Facebook's own policy statements.

While Facebook may not be liable for the published content of its users, it is liable for failing to enforce its own published policies and procedures to both prevent such attacks from occurring and subsequent to "harmful content" being published to then take appropriate action. In this instance, Facebook negligently failed to become aware of the vicious attack on Howard and then did nothing to prevent further harm from occurring to Howard or to others from being victimized by those with Facebook accounts; Facebook clients and users.

## HERTZ CREATES HOSTILE WORK ENVIRONMENT WHICH RESULTS IN HOWARD BEING HARMED SEVERELY

12. Defendant Hertz created the conditions of a hostile work environment by pressuring District and Location Managers and employlyees at Hertz Maui Airport location to increase sales. Hertz

pressured District Manager Fernandez to increase sales at the Hertz Maui location, who in turn applied excessive pressure on her Location Managers to increase sales, who directed their frustration on the lower "rank and file" employees to obtain "upgrades" by customers.  This business environment of frustration, and undo pressure, causing hostility, found an unsuspecting outlet in an unparalleled assault on the race, sexual orientation, dignity, financial status and reputation on Howard, perpetuated by and including no less than five Hertz employee personnel; including upper and middle level management as well as lower level employees; in a public forum, on the Facebook site.  The total and complete focus on increasing sales, to the exclusion of everything else, is in direct contravention to the *Hertz Standards of Business Conduct* (hereinafter "HSBC") contract which employees are required to read and to sign. Defendant C.E.O. Mark Frissora, (hereinafter "C.E.O. Frissora")in the HSBC, states "I expect all Hertz employees to be familiar with this code.  **Our commitment to you is to offer periodic training** (emphasis Howard) so that you better understand the reqirements and to have the opportunity to ask questions to aid in your understanding."  In fact, at Defendant Hertz Maui Airport location, the only trainings that took place were to increase sales; and to learn how to take a no from a customer and turn it into a yes.  C.E.O. Frissora and Maui District Manager Fernandez, were grossly negligent in failing to implement the standards of business conduct as set forth in the HSBC, and allowing Hertz employees to routinely violate the standards set forth in the HSBC. C.E.O. Frissora further states in his "Message from Mark P. Frissora", which "Message" appears at the beginning of the HSBC, "We will always deal fairly with our business partners and customers."  Not only did Hertz failed to "deal fairly" with Plaintiff Howard, prior to the assault on Facebook by failing to enforce their own policies, and standards,  and by discrimination towards Akina by Fernandez; Hertz then compounded the violent racial, discriminatory and

personal assault on Howard by further treating him *unfairly* in a racially discriminatory manner by Hertz's letter of response to Howard by Hertz's Associate General Counsel, Kevin McIver (hereinafter "McIver") who by his official and final letter of response on March 2.., 2012, dismissed Howard being an African-American. Simultaneously, McIver acknowledged the severity of the harm caused to Howard, and its corresponding risk to Hertz; which resulted in the termination of several employees and the resignation of others. However, the District Manager Fernandez who gross negligence allowed the racial abuse and attack on Howard to occur, by allowing repeated violations of Hertz Standards of Business Conduct, as well as Hertz policies and procedures, is still presently employed by Hertz.

13. Moreover, as stated in the HSBC, Managers have "Added Responsibilities" and are supposed to "train other employees", "never excusing or promoting violations of this code"; and keeping "an eye out for misconduct". Apparently, as evidenced by the gross negligence of both corporate officers and a District Manager failing to implement and supervise the HSBC, as well as the gross negligence and mismanagement and misconduct of higher management and middle management routinely violating the standards set forth in the HSBC; the favoritism i.e. discrimination that developed as an obsession with increasing sales, from the top down; a hostile work environment created that developed from the same; Howard became a vulnerable victim of Defendant Hertz's gross negligent behavior.

## HERTZ COMMITS MISCONDUCT PRIOR TO HERTZ ASSAULT ON HOWARD ON FACEBOOK

14. Prior to the above mentioned Hate Crime against Howard on Facebook, District Manager Fernandez demonstrated favoritism towards Location Manager Akina, and protected him, for his

ability to create the condition for increased sales at the Hertz Maui Location.  Akina was caught on at least two separate occasions, posting private customer and employee information on Facebook, targeting in one instance Fernandez herself, and in another instance a Hertz customer . In both instances, Fernandez failed to discipline Akina appropriately and in accordance with Hertz policies and procedures.  Fernandez's failure to properly and adequately discipline Akina resulted in Howard's rights being egregiously violated, in a violent racially discriminatory attack and sexually discriminatory slur on Facebook, which also flagrantly mischaracterized his financial status while ridiculing and demeaning Howard in a cruel and inhumane way; not to mention Howard being threatened with violent physical harm.  District Manager Fernandez also failed to discipline another employee who other employees complained of providing upgrades to non-english speaking customers, who had obtained upgrades without their consent, and flagrantly seeking them out, because such non-speaking English speaking persons were vulnerable and easy prey.  When a certain percentage of these customers, who had obtained upgrades without their knowledge and, or consent, complained; the upgrade charges were removed from their bills, however, the employee continued to receive his commission derived from this unscrupulous behavior and misconduct.  This particular employee deliberately attempted to increase sales at the customer's expense, and this behavior was condoned. Additionally, Akina was allowed to "moonlight" for a Hertz franchise in Wailea, for cash, in violation of Hertz policies and procedures.  Fernandez and Akina were known to go out "drinking" together.  Fernandez repeatedly violated Hertz policies and procedures and failed to adhere to the same.  Moreover, Corporate management at Hertz failed to properly supervise or review Fernandez and as long as Fernandez provided them with sales at the Maui Airport location, Hertz allowed her to do as she pleased and looked the other way.

**HERTZ CONTINUES TO HARM HOWARD SUBSEQUENT TO VIOLENT RACIAL ASSAULT ON FACEBOOK**

15.  Howard discovers the Assault against him on Facebook.

Following the above mentioned Facebook posting incident on February 27, 2012, Howard was informed about the posting by a client who read the post and the Facebook posting was documented.  On February 28th, 2012, Howard went into the Maui Hertz Airport location and brought the attack to the attention of Fernandez.  Fernandez did not follow proper procedures. Akina was informed and he removed the above mentioned Facebook posting.  Fernandez and Hertz Human Resources attempted to find out any person who had any relationship to Howard, in order to purge them from the company.  Three employees involved in the Facebook posting were suspended and then terminated from Hertz and Akina apparently resigned, although there was evidence that Fernandez was intending to terminate his employment.  Moreover, an employee who was terminated from the Hertz Maui location continues to be employed by Hertz. District Manager Cabebe, allegedly resigned and now holds a similar position for Hertz's competitor, Budget Rent-A-Car.  Several employees from Hertz Maui were then hired by Cabebe at Budget.

16.  District Manager Fernandez violates Employee Protection Agreement.

Fernandez attempted to retaliate against an employee who was a sister of the party who informed Howard regarding the Facebook posting.  The employee Union representative was successful in preventing Hertz from successfully retaliating against said employee.

17.  Associate General Counsel Kevin McIver reinforces racist discrimination against Howard

Howard wrote to Hertz legal counsel, following the Facebook incident, and Hertz Counsel, Debbie Debiak, Esq. first misunderstood Howard to be an employee complaining of being a victim of discrimination. Finally, Hertz Associate General Counsel Kevin McIver wrote to Howard in a manner which then *compounded* the original offense by the Hertz employees on Facebook. McIver wrote to Howard stating "significant steps were being taken to prevent the recurrence of such behavior." This statement was not true, accurate or correct. In fact, Fernandez simply told employees, present at that time, that they would be prosecuted if any reference was made to Hertz on Facebook. There was nothing provided to the employees in writing, and no action was taken to insure that future employees, and, or managers had the same information. Hertz failed to implement any sensitivity trainings or even their own "periodic trainings" regarding their HSBC, and nothing of such nature was contemplated, conducted or implemented by Hertz in Maui; even after such an egregious and violent racist assault on a customer; an African-American customer. McIver went on to state in his letter that the use of Facebook by Hertz was "no way condoned" by Hertz, but Hertz District Manager Fernandez did condone it by dismissing previous complaints, acquiescing to it and failing to properly and sufficiently disciplining the employee responsible (because he was Fernandez's "favorite" who helped to keep her numbers stay up so that she good continue to look good). Furthermore, Hertz employees were able to access Facebook on the Hertz computer and Akina was seen using Facebook at the Maui location. And so the Facebook posting by Akina, which were preventable, continued until the incident with Howard. McIver, in his letter responding to Howard, took advantage of Howard, who had written directly to Hertz, and misrepresented to him that the misconduct of the Hertz employees was "far outside" the scope of their employment, in an insincere effort to avoid and to neglect responsibility for the serious harm that resulted from

Hertz's actions towards Howard. Moreover, the same McIver, wrote that such conduct was not reflective of the Hertz company, when in fact, McIver only affirmed that it was, in fact, reflective, by his own insincere, inaccurate and untruthful statements. Hertz, by and through McIver, their legal counsel, acknowledged to Howard the damaging severity of Howard's experience and then proceeded to 1) refer to the embarrassment of Howard, as opposed to the embarrassment of Hertz, so as making it appear to Howard that Howard should have been embarrassed by such attack on him because of his being "black"; 2) there were no overtures of any concern or consideration made to Howard, of any kind, to provide any kind of counseling or equitable relief. There was simply no interest on the part of Hertz in Howard as a person or as a customer and yet Howard, was an excellent and top rated customer of Hertz in their gold card member Presidential Circle. It was made clearly apparent to Howard, that if he had been a "white" customer, Herz would have done something more than just try to protect themselves from their own liability. They would have made some overture, some accommodation. HERTZ REINFORCED THE FACT THAT HOWARD WAS GETTING WHAT HE DESERVED BECAUSE HE IS "BLACK". HERTZ INSTEAD OF EXPRESSING "REGRET" OVER HOWARD'S ALLEGED EMBARRASMENT, SHOULD HAVE BEEN HORRIBLY EMBARRASED FOR HOW HERTZ HAD MISTREATED HOWARD, WHO WAS ONE OF THEIR BEST CUSTOMERS. HERTZ, INSTEAD SOUGHT TO PROTECT THEMSELVES AND THE "BLACK" CUSTOMER WAS SIMPLY EXPENDABLE. AFTER ALL HE WAS A"BLACK" CUSTOMER WITH A GOLD MEMBERSHIP IN THEIR PRESIDENTIAL CIRCLE, NOT A SIMILARILY SITUATED "WHITE" CUSTOMER. The message was clear. Hertz might have been more interested in 1) accommodating Howard and 2) doing something to prevent such reoccurrence; but, Howard is an African-American, and he just didn't count.

18.     Defendants wrongful conduct (jointly and severally) constitutes gross negligence and Howard has suffered injuries and damages as set forth herein and is therefore entitled to receive general, special and punitive damages in amounts to be determined at a trial or hearing hereof.

## COUNT II – WILL AND WANTON MISCONDUCT AND, OR RECKLESS DISREGARD

19.     Plaintiff incorporates by reference paragraphs 1-18 as if fully set forth herein.

20.     Defendants wrongful conduct (jointly and severally) constitutes willful and wanton misconduct and, or reckless disregard.

21.     Defendants committed the acts alleged herein, and, or ratified the same maliciously, and oppressively with the wrongful intention of injuring Howard for an improper and evil motive amounting to malice in conscious disregard of Howard's rights.

22.     Defendants wrongful conduct (jointly and severally) constitutes gross negligence and Howard has suffered injuries and damages as set forth herein and is therefore entitled to receive general, special and punitive damages in amounts to be determined at a trial or hearing hereof.

## COUNT III – NEGLIGENCE

23. Plaintiff incorporates by reference paragraphs 1-22 as if fully set forth herein.

24. Defendants owed a duty of care to Plaintiff Howard. Defendants breached their duty.

25. As a direct and proximate result of Defendants wrongful conduct, Howard has suffered injuries and damages as set forth herein and is therefore entitled to receive general damages, and or special damages in amounts to be determined at a trial or hearing hereof.

## COUNT IV– NEGLIGENT RETENTION, AND OR SUPERVISION

26.     Plaintiff Howard incorporates by reference paragraphs 1- 25 as if fully set forth herein.

27.     Fernandez knew that Akina had posted hostile statements and information about a customer and herself, a District Manager of Hertz, on Facebook on two previous occasions, and yet she failed to either suspend or terminate Akina's employment.  His propensity toward harassment, hostility, and violent speech was evident by the above mentioned and other Facebook postings, which Fernandez knew and should have known about.

28.     Fernandez failed, neglected an or refused to supervise, and or discipline Akina knowing his character, personality and or proclivities.

29.     Facebook failed to properly supervise their site sufficiently to either prevent or take down the harmful posting and failed to terminate the Defendants account holder accounts through to the filing of this cause of action on November 22, 2013.

30.     Defendant Hertz and Defendant Facebooks wrongful acts and or omissions against Plaintiff constitute negligent hiring, retention and, or supervision.

31.     As a direct and proximate result of Defendants wrongful conduct, Howard has suffered injuries and damages as set forth herein and is therefore entitled to receive special damages, and or general damages in amounts to be determined at a trial or hearing hereof.

## COUNT V– RACIAL DISCRIMINATION AND ASSAULT

32.  Plaintiff Howard incorporates by reference paragraphs 1-31 as if fully set forth herein.

33..  Hertz is vicariously liable and responsible for the damage and harm done to Howard in a violent racist attack; by five of its employees on Howard, an otherwise well paying regular Hertz customer, in  statements made in communication and dialogue on Facebook.  Howard was

treated in a disparate manner and with racial animus. This egregious and unlawful conduct was engaged in by Hertz managers and lower level employees while they were simultaneously conducting Hertz business concerning Howard and his car rental business as well as his ability to pay for such car rentals. This conduct violated Howard's Civil Rights which are protected under Title II of the Civil Rights Act of 1964 regarding Howard's right to freedom from discrimination in a public accommodation. The racial attack against Howard also constituted a conspiracy against Howard's rights which deprived him of the above mentioned freedom from discrimination in public accommodations; such racial discrimination also being a violation of Article I Section V of the Hawai'i State Constitution.

34. The racial discrimination did not end with the assault by Hertz employees against Howard, however. It continued by and through the written response by McIver to Howard; which offered no support, care, accommodation or consideration or remuneration for the clear and obvious harm caused by Hertz to Howard. In fact, while the business culture of Hertz, has been shown to be "obsessed" by increasing sales, and while Howard was one of their best customers on Maui and in Hawai'i, belonging to their Presidential Circle as well, Hertz continued to treat Howard in a racially discriminatory manner by failing to treat Howard in the manner that any customer should reasonably expect to be treated, and certainly a customer of his caliber. Hertz didn't attempt to make amends or even keep Howard's business, acknowledging that they would probably lose his business, and demonstrated that they didn't care one way or another except for the expression of obvious insincere platitudes by McIver. It's understood that its actions, not words that count, and McIver's actions revealed the racist mentality that is obviously pervasive at the Hertz Corporation. No similarly situated "white" customer would be treated in such a manner.

35.. Furthermore, Hertz Corporation's C.E.O. Frissora, had previously responded to a "white" customer's complaint to the Hertz Corporation about service at its Hertz Maui Airport location and expressed great concern to Maui Hertz District Manager Fernandez regarding the possibility of Hertz losing its "Pleasant Holidays" contract, as a result of this customer's complaint at that time. C.E.O. Frissora, however, showed no interest, whatsoever, in customer Howard being violently racially threatened and assaulted, discriminated against, libeled and defamed.

### COUNT VI –SEXUAL ORIENTATION DISCRIMINATION

36. Plaintiff Howard incorporates by reference paragraphs 1-35 as if fully set forth herein.

37. Hertz is vicariously liable and responsible for the damage and harm done to Howard by employees of Hertz, who while engaged in discussing the car rental business of Howard, and his ability to pay for such car rentals, discriminated against his alleged sexual orientation explicitly and implicitly in statements made in communication and dialogue on Facebook. This behavior by Hertz violated Howard's Civil Rights which are protected under Title II of the Civil Rights Act of 1964 and 28 USC Section 241 and 42 USC Section 1995.

### COUNT VII – PUBLICATION OF PRIVATE FACTS AND VIOLATION OF SAFE HARBOR LAWS

38. Plaintiff Howard incorporates by reference paragraphs 1-37 as if fully set forth herein.

39.All named Defendants violated and, or allowed the violation of Safe Harbor Laws and data collection and privacy laws by the publishing and distorting Howard's sensitive financial and credit card information.

22

40. All named Defendants violated and,or allowed to be violated the invasion of Plaintiff's privacy by the publishing of other facts pertaining to Howard's car rental history with Defendant Hertz.

41. All named Defendants violated and, or allowed to be violated the invasion of privacy by the disclosing and, or insinuating Plaintiff's alleged sexual orientation.

## COUNT VIII – LIBEL PER SE

42. Plaintiff Howard incorporates by reference paragraphs 1-41 as if fully set forth herein.

43. Howard has been libeled in his profession by Hertz and by Facebook. Howard is the President of an accounting business, a business owner, and has served as a tax professional for individuals as well as corporation. Howard has been recently recognized by the Internal Revenue Service and has been offered the opportunity to be the sole tax preparation business to provide volunteer services at numerous locations for Hawai'i Residents. Howard is also engaged in many humanitarian projects and business endeavors. He also owns an event business on Maui. Howard's reputation has been irreparably harmed by the false allegations made by Hertz about his personal and business financial condition. Private information has been disclosed by Hertz , by and through Hertz employees which is false and, or misleading and are to the detriment of his reputation in his business, community and philanthropic endeavors. The slurs against his race and alleged sexual orientation; the intentional, willful mischaracterizations of Howard's car rental history and financial condition, constitutes character assassination. Howard's business outreach includes many members of the community, throughout the Hawaiian Islands, as well as to other parts of the world. All these endeavors, including Plaintiff's humanitarian endeavors, have been compromised by the libel perpetuated against him by Hertz

by and through their employees in the course of a defamatory discussion of Plaintiff's Hertz car

rental business and business and his personal finances.

## COUNT IX–HOWARD'S PRIVACY VIOLATED THROUGH THE "PUBLIC

## DISCLOSURE OF PRIVATE FACTS"

44.  Plaintiff Howard incorporates by reference paragraphs 1-43 as if fully set forth herein.

45..  Hertz by and through their employees, made private facts about Howard public which were

both the actual and proximate cause of the harm which Howard has and continues to suffer.

There was no legitimate public interest in disclosing these private facts of Howard and the

Defendants are clearly at fault. Melvin v. Reid, 112 Cal. App. 285 (1931) These private facts

concerning his rental car preferences; his financial information and his alleged sexual orientation

were communicate to enough people, on Facebook, that it was able to reach the general public.

Brents v. Morgan 299 S. W. 967 (Ky. 1927)  the Federal Court in Kansas in Peterson v.

Moldofsky determined that if the means of publication is the internet, that the publication of

private facts *to even a small group of people* is sufficient to satisfy the standard.  The disclosure

of Howard's private facts would be highly offensive to any reasonable person.  Sidis v. F-R

Publishing Corp., 113 F.2d 806 (2nd Cir. 1940)  Furthbermore, Hertz has a legal obligation not to

reveal anything regarding the financial condition of their customers to the public .  Howard did

not make his alleged sexual orientation known to Defendants Hertz and Hertz employees and

gave no consent to Hertz, by and through their employees, to allege such private facts about his

sexual orientation to the public.

46. Hertz employees were allowed to violate Hertz Standards of Business Conduct regarding

safeguarding Third-Party information as set forth in the HSBC.  Hertz employee Akina, one of

Fernandez's best sellers at Hertz, was not disciplined previously regarding his disclosure of

customer information with Hertz on Facebook as well as his ridiculing the District Manager

Fernandez, herself, on Facebook.   An employee's name, which employee brought Akina's

violations to the attention of Fernandez, was disclosed by Fernandez to Akina in further violation

of the employees protection as set forth in the HSBC.

47. Again, Howard's rights to privacy as set forth in the HSBC and in Hertz on-line privacy

statement were violated by Hertz by and through their employees.

## COUNT X - HERTZ REPRESENTED HOWARD IN A "FALSE LIGHT"

48 Plaintiff Howard incorporates by reference paragraphs 1-47 as if fully set forth herein.

49. Hertz by and through their employees made misleading statements about Howard and his

rental of Hertz vehicles, in a public forum, on Facebook, as well as Howard's financial condition,

which misrepresentations were done with malice, willfully and knowingly, and was highly

offensive and injurious to Howard causing damage to Howard's mental and emotional well-being

and to his dignity.   Hertz's statements about Howard's credit card being declined created and, or

was intended to create a misleading impression about Howard's financial condition; which

mischaracterization created harm to Howard.

## COUNT XI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

50. Plaintiff Howard incorporates by reference paragraphs 1-49 as if fully set forth herein.

51.  As a result of viewing the Facebook posting, Howard has suffered severe depression and

anxiety and has been clinically diagnosed as having severe post-traumatic stress disorder.

Howard has been treated by Maui Memorial Hospital and the Maui County Community Health

Center.  He was diagnosed following the above mentioned assault by Hertz employees on

Facebook with acute PTSD on April 10, 2012.  Howard had contemplated "driving his car off a

cliff into the ocean" but talked himself out of it.  He has recently been treated at the Emergency

Room of MMMC on at least two separate occasions in 2013; has also now been diagnosed with

severe PTSD relating to the Racial Attack on Facebook in 2012 and is being prescribed Tenex.

52..  As recently as November 13, 2013, Plaintiff Howard became revictimized and distraught by

the Hertz telling Howard's attorney that there was "no urgency" to meet Plaintiff's deadline for

resolving the issue of the Facebook incident which occurred on February 27th, 2012.  Howard

developed suicidal ideation and required much assistance to prevent harm to Howard.  Howard's

attorney reached out to Hertz and requested any humanitarian gesture of kindess, support and

consideration towards Howard without any admission of liability, in order to intervene with

Howard's severe PTSD at that time.  Hertz failed to respond to Howard's attorney's request for

help.

53. Howard was on the road to entrepreneurial success and since the above mentioned Facebook

posting by Hertz employees; he is failing in his health, and Howard's business financial career

has been severely compromised and is in jeopardy.  The only event that preceded Howards

decline in his health and well-being is Hertz's Cyber Bullying.  There was not an intervening

event, which came between the bullying and Howard's decline.  Howard has had serious

thoughts of committing suicide and his sense of self-esteem and self-worth have been seriously

harmed.  Howard had no history of mental illness prior to this Facebook incident.  Howard, since

this Facebook incident has gone days at time without sleeping, and suffers from anxiety,

headaches, mood swings, constipation, anger, rage and depression.  His anxiety further

exacerbates his speech impediment disability; which interferes with his work.

26

54. "The scope of the employer's liability for the intentional torts committed by an employee extends beyond employer's actual or possible control over the employee to include risks inherent in, or created by the enterprise, because the employer, rather than the innocent party is best able to spread the risk through increased rates or liability insurance. The court must determine if the action taken by the employee was a genuinely foreseeable consequence of his or her employment. The proper focus is not whether the wrongful act was itself authorized but whether it is in a course of action that was a course of action authorized by the principal." Ray vs. Behavioral Health Inc., 967 F. Supp. 417 (D.Nev. 1997)

55. First, the "course of action" was "authorized" by Fernandez by her failure to properly discipline i.e. suspend and or terminate Akina because of his previous two incidents regarding his egregious and hostile Facebook postings, and by Cabebe, who was present, during the "wrongful act" itself, and "authorized" it by virtue of his full participation in it.

56. The discussion of the ability of a customer's financial or otherwise ability to rent a Hertz vehicle is within the responsibility that pertains to the above mentioned Hertz employees in the case at bar. The tortuous conduct that was committed by the corporate defendants employees is egregious and oppressive and it is further characterized by malice or wantonness, justifying the imposition of punitive damages.

57. " 'An individual is liable for intentionally inflicting emotional distress when his conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." Howell v. New York Post Co. 81 N.Y. 2d 115, 121, 596 N.Y.S. 2d 350 (1993). Specifically, a plaintiff must prove (1) extreme and outrageous conduct; (2) inent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) causal

connection between the conduct and injury; and (4) severe emotional distress.'" <u>Stuto v. Fleishman,</u> 164 F.3d 820, 827 (2d Cir. 1999) cited in <u>Turley v. Arcelor-Mittal</u>

58. As stated above an employer can be held liable for this tort based on the acts of its employees if the employees acted within the scope of their employment.

59. The <u>Diagnostic and Statistical Manual of Mental Disorders</u> fourth and fifth edition (hereinafter DSM-4 and DSM-5) establishes that racism and, or a racist incident can directly cause the onset of PTSD. The harm caused by Hertz to Howard is most accurately described in an article by Dr. Butts, M.D. which appeared in the Journal of American Academy of Psychiatry and the Law, entitled *The Black Mask of Humanity: Racial/Ethnic Discrimination and Post-Traumatic Stress Disorder,* which stated, "Further, it will be argued herein that the subjective experiences and symptoms experienced by those African-Americans are often extreme and catastrophic, requiring active psychotherapeutic and psychopharmacologic care." This article which was printed in 2002 has been proven correct by the latest editions of DSM -4 and 5.

60. The conduct of both the employees involved in the publication of the above mentioned Facebook incident and the conduct of Fernandez leading up to this incident had "a high degree of moral culpability, which manifest[ed] a conscious disregard of [Howard's] rights." <u>Turley v. Arcelor-Mittal</u> N.Y. Fed (2012) cting Home Ins. Co. v. Am. Home Prods. Corp., 75 N.Y. 2d 196, 203, 550 N.E.2d 930, 934 (1990) (internal citations and quotation marks omitted). Further, because [Fernandez and Cabebe] as [district] manager[s], not only "ratified" the outrageous and malicious conduct that [Howard] was subjected to, but also contributed to it, the jury was permitted to award punitive damages against the corporate defendants. Id citing <u>Loughry v. Lincoln First Bank</u>, N.A., 67 N.Y. 2d 369, 378, 494 N.E. 2d 70, 74 (1986)

61. " 'Egregious' emotional distress claims 'generally involve either 'outrageous or shocking '

discriminatory conduct or a significant impact on physical health of the plaintiff.'" Id. citing

Khan, 2008 WL 4283348

62 Fernandez, the Maui District Manager *failed* to remedy Akina's previous hostile and

harassing Facebook postings, prior to the racist posting against Howard, and essentially

*acquiesced* in them.  Cabebe, the Hilo District Manager *actively perpetuated* and *fully*

*participated* in the racist act on Facebook.

63. "The degree of reprehensibility of the defendant's misconduct is '[p]erhaps the most

important indicium of the reasonableness of a punitive damages award.'" Gore, 517 U.S. at 575

…The Supreme Court has outlined five factors relevant to determining the reprehensibility of a

defendant's conduct. State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 419, 123 S. Ct.

1513, 155 L. Ed. 2d 585 (2003).  Accordingly, courts should consider whether:  [T]he harm

caused was physical as opposed to economic; the tortuous conduct evinced an indifference to or

a reckless disregard of the health or safety of others; the target of the conduct had financial

vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm

was the result of intentional malice, trickery, or deceit, or mere accident." Id.

64. Furthermore, the response by Hertz Associate General Counsel Kevin McIver, to Howard in

writing on March 23, 2012 constituted additional infliction of emotional distress on Howard. In

McIver's response, he  compounded the original racist act; treating Howard, a premier loyal

customer, in a manner which  negatively reinforced the original racist act perpetuated by Hertz

management and employees by 1. insinuating that Howard is "embarrassed" *because* he is an

African-American;  2. failing to offer *any* accommodation to Howard after acknowledging the

severity of Facebook incident; 3. making a false representation about what Hertz was doing to insure the safety of African-Americans from racist, hostile threatening and discriminatory acts by Hertz employees; 4. failing to take responsibility for one District Manager of Hertz condoning and acquiescing to previous hostile postings on Facebook, by a Hertz Location Manager, and the other District Manager actively participating in and perpetuating a racial attack on Howard.

65.    Due to Defendant Facebook's negligence in monitoring, supervising and administrating its site, Howard suffered the severe infliction of mental and emotional distress from the above mentioned Facebook posting incident involving "harmful content" on or about February 27th, 2013.

66.    Due to Defendant Facebook's continuing negligence, Howard continues to suffer the infliction of mental and emotional distress, by Facebook's subsequent lack of action following the above mentioned Facebook posting incident involving "harmful content" on or about February 27th, 2013.

67.    The wrongful acts and, or omissions against Plaintiff constitute infliction of emotional distress.

68.    Defendants conduct was outrageous, beyond the bounds of decency, will and wanton and malicious.

69.    As a direct and proximate result of Defendants wrongful conduct, Howard has suffered injuries and damages as set forth herein and is entitled to recover general, special and punitive damages in amounts to be determined at a trial or hearing hereof.

## COUNT XII - BREACH OF CONTRACT

70. Plaintiff Howard incorporates by reference paragraphs 1-69 as if fully set forth herein.

71.     Defendant Hertz by and through their employees breached their contract with Howard by knowingly, intentionally and willfully publishing personal and private financial information of Howard and furthermore, misrepresenting and disclosing such information to the public on the Facebook social media networking site.

72.     Defendant Facebook, breached their contract with the public and their account holders and users, of which Howard is an account holder, by allowing already clearly defined "harmful content" to appear on their site for approximately 24 hours without becoming aware of such "harmful content" and taking it down.  Furthermore, Defendant Facebook, breached their contract with  the public and with their account holders and users by failing to take the proper action necessary to prevent Defendant Hertz by and through their then employess from being able to continue to attack, and harm others with hostility, and violent conduct on Facebook, by continuing to allow the named Defendant employees to maintain accounts on Facebook.

## COUNT XIII - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

73. Plaintiff by reference incorporates paragraphs 1-72as if fully set forth herein.

74.. As a result of Defendant wrongful conduct, Howard sustained serious mental condition and, or illness

75. As a result of Defendants wrongful conduct, Howard has suffered injuries and damages as set forth herein and is therefore entitled to general and special damages in amounts to be determined at a trial or hearing hereof.

Wherefore, Plaintiff prays for a judgment against Defendants as follows:

1.

Compensatory/ General damages for the loss of economic opportunities; for libel per se, slander and defamation to his character; for emotional distress;pain and suffering and mental anguish and future medical bills.

2.

Special Damages  for medical bills past, present and future and any other bills incurred.

3.

Punitive damages to compel the corporate defendant and other similarly situated companies or corporations to exercise greater degree of control over the conduct of its employees and to deter acquiescence or approval of similar tortuous conduct in the future.

4.

Aggravated damages for the manner in which Plaintiff's injuries have been aggravated by Defendant's behavior in response to Plaintiff's injuries.

5.

Special relief compelling Defendants to institute sensitivity training programs to educate employees about  1. the harm to persons resulting from hate based crimes i.e. racial based, gender based and sexual orientation based discrimination. 2. Characteristics of a hostile work environment and implementation of procedures for intervention and whistle blower protection for employees.

6.

Attorneys fees and costs

7.                                                                                    A

Any other relief which this Honorable Court deems just and equitable.



Respectfully submitted,

Dated: 11/20/2013

Wailuku, HI                          Burton D. Gould, Esq. of The Law Offices of Burton D.

                                     Gould, LLLC , Attorney for Plaintiff  Maurice Howard