IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MAURICE HOWARD, | ) | CIVIL NO. 13-00645 SOM/KSC |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANT THE |
| | ) | HERTZ CORPORATION'S MOTION |
| vs. | ) | FOR SUMMARY JUDGMENT |
| | ) | |
| THE HERTZ CORPORATION AND ITS | ) | |
| EMPLOYEES SHAWN AKINA; ROSE | ) | |
| FERNANDEZ; RYAN CABEBE; | ) | |
| VERONICA HUARD; SAMANTHA | ) | |
| CHUN, AND PIA SOMERA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

**ORDER GRANTING DEFENDANT THE HERTZ CORPORATION'S
MOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION.**

Defendant The Hertz Corporation moves for summary judgment as to Plaintiff Maurice Howard's claims for negligent supervision, negligent retention, and negligent training.  Hertz argues that summary judgment is appropriate because Howard cannot establish that Hertz owed him a duty to prevent its then-employee, Shawn Akina, from making discriminatory Facebook posts about Howard.  The court grants Hertz's motion.

**II.     BACKGROUND.**

Howard, a Hertz Rent-a-Car customer, alleges that he was the subject of Facebook posts by Akina and other Hertz employees that constituted "an attack on [his] race, sexual

orientation, and financial state and condition."  <u>See</u> ECF No. 66, PageID # 496.

On February 27, 2012, Howard had patronized Hertz's Maui Airport location, where Akina was a lot manager.  <u>See</u> ECF No. 106-9, PageID # 989.  After Akina allegedly saw Howard walking on foot near the Hertz location, he posted on his Facebook page, "I seen Maurice's bougie ass walking kahului beach road . . . nigga please!"  <u>See</u> <u>id.</u>  A number of Akina's Facebook "friends," including Defendants Samantha Chun, Veronica Huard, Ryan Cabebe, and Pia Somera,[1] all Hertz employees, commented on the post.  <u>See</u> ECF No. 18, PageID # 182.  After Akina stated that Howard was "a broke ass faka who act like he get planny money," Chun posted the comment, "run that faka over!!! lol."  <u>Id.</u>  Akina added, ". . . i was tempted too, but nah, i had a white car, neva like u guys scrub da blood off."  <u>Id.</u>  Huard subsequently commented, "What no BMW for h today?", to which Akina responded, "now he knows we got mercedes, he's gunna drive those.  it's too bad his CC declines all the time . . . ."  <u>Id.</u>  Cabebe posted, "Hahahaha . . . he still renting huh LOL," and Huard later commented, "No more Troy his favorite boy though!  Sorry Troy!"

_____

[1] Howard lists "Pia Somera" as a Defendant, but also refers to her in his briefs as "Pia Somers."  <u>See</u> ECF No. 66, PageID # 494.  It appears that the Defendant's legal name is "Pia Somers," but that she used "Pia Somera" as her name on her Facebook account.

Id.  Somers "liked" Akina's post.  See ECF No. 106-10, PageID # 992.

Tina Pomale, another Facebook "friend" of Akina's, saw the post and showed it to Howard.  See ECF No. 106-6, PageID # 982.  According to Howard, these comments were visible for approximately twenty-four hours before Akina removed them.  See ECF No. 5, PageID # 11.

The day after the posts, Howard came to the Hertz Maui Airport location to complain about them.  See ECF No. 106-9, PageID # 989.  He met with Akina's supervisor, Rose Fernandez, who was not one of Akina's Facebook "friends" and had been unaware of the post.  See id., PageID # 991.  Fernandez reviewed the post and considered it offensive and inappropriate, as well as a violation of Hertz's corporate policy.  See id., PageID # 990.  Akina, Huard, Chun, and Cabebe were all subsequently terminated by Hertz or resigned as a result of the post.  See id.

Fernandez had previously been notified by another employee that in 2009 or 2010 Akina had posted a Facebook comment that "made light" of her after she nearly walked into a coconut tree.  See id., PageID # 877.  Although she issued a verbal warning to Akina and directed him to refrain from making any Facebook posts related to Hertz, she had also considered the post to be "fairly innocuous" and nonthreatening.  See id.

3

In connection with the Facebook posts concerning him, Howard asserted various claims against several Hertz entities, individual Defendants Akina, Fernandez, Cabebe, Huard, Chun, and Somers, as well as Facebook Inc.  See ECF No. 1.  Howard alleged that he suffered posttraumatic stress disorder as a result of reading the Facebook posts, that he was forced to sell his tax preparation business, and that he was financially damaged prior to selling his business because he lost many customers as a result of Akina's posting that Howard's credit card was declined twice.  See id.

On October 23, 2014, the court granted Hertz's motion to dismiss some of Howard's claims, retaining only his negligent supervision, negligent retention, and negligent training claims.  See ECF No. 79, PageID # 637.  The court's order also dismissed Hertz Global Holdings, Inc., Hertz Investors, Inc., and Facebook as Defendants.  See ECF No. 79.

Hertz now moves for summary judgment as to Howard's remaining claims.  See ECF No. 103.

**III.        SUMMARY JUDGMENT STANDARD.**

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (2010).  See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A movant must support his

4

position that a material fact is or is not genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party without the ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors

Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted).

The nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  T.W. Elec. Serv., Inc., 809 F.2d at 630.  At least some "'significant probative evidence tending to support the complaint'" must be produced.  Id. (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  See Addisu, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact.").  "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial."  Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587).  Accord Addisu, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

All evidence and inferences must be construed in the light most favorable to the nonmoving party. T.W. Elec. Serv., Inc., 809 F.2d at 631.  Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. Id.  When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." Id.

IV.      ANALYSIS.

Howard's claims for negligent supervision, negligent retention, and negligent training require him to establish the typical negligence factors:  1) duty, 2) breach of duty, 3) causation, and 4) damages.  Howard's failure to establish the duty element is fatal to each claim.

Under Hawaii law, "it is fundamental that a negligence action lies only where there is a duty owed by the defendant to the plaintiff." Pulawa v. GTE Hawaiian Tel, 112 Haw. 3, 11, 143 P.3d 1205, 1213 (2006) (quoting Bidar v. Amfac, Inc., 66 Haw. 547, 551, 669 P.2d 154, 159 (1983) (brackets in the original) (citations and quotation marks omitted)).  "The question of whether one owes a duty to another must be decided on a case-by-case basis," with the pivotal issue being foreseeability.

7

Pulawa, 112 Haw. at 12, 143 P.3d at 1214 (citation omitted).  As

the Hawaii Supreme Court explained in Pulawa,

> a defendant's liability for failing to adhere
> to the requisite standard of care is limited
> by the proposition that the defendant's
> obligation to refrain from particular conduct
> or, as the circumstances may warrant, to take
> whatever affirmative steps are reasonable to
> protect another is owed only to those who are
> foreseeably endangered by the conduct and
> only with respect to those risks or hazards
> whose likelihood made the conduct or omission
> unreasonably dangerous.

Id. (brackets and emphasis omitted) (quoting Doe Parents No. 1 v.

State Dep't of Educ., 100 Haw. 34, 72, 58 P.3d 545, 583 (2002)).

"Thus, if it is not reasonably foreseeable that the particular

plaintiff will be injured if the expected harm in fact occurs,

the defendant does not owe that plaintiff a duty reasonably to

prevent the expected harm."  Pulawa, 112 Haw. at 12, 143 P.3d at

1214 (quoting Doe Parents, 100 Haw. at 72, 58 P.3d at 583).

Furthermore, "a defendant owes a duty of care only to

those who are foreseeably endangered by the conduct and only with

respect to those risks or hazards whose likelihood made the

conduct unreasonably dangerous."  Janssen v. Am. Hawai'i Cruises,

Inc., 69 Haw. 31, 34, 731 P.2d 163, 166 (1987) (internal

quotation marks and citations omitted).  "It does not mean

foreseeability of any harm whatsoever, and it is not sufficient

that injury is merely possible."  Pulawa, 112 Haw. at 12, 143

P.3d at 1214 (quotation marks omitted) (quoting Henderson v.

Prof'l Coatings Corp., 72 Haw. 387, 395, 819 P.2d 84, 90 (1991));
see also Pulawa, 112 Haw. at 14, 143 P.3d at 1216 (rejecting
plaintiffs' argument that "the precise manner of the injury or
the specific harm or consequence of the negligence need not be
foreseeable" (brackets and quotation marks omitted)).

### A.    Negligent Supervision and Negligent Retention.

With respect to the negligent supervision and negligent
retention claims, Howard contends that Hertz owed him and other
customers a duty of care to prevent Akina from posting harmful
social media content at work.   See ECF No. 106, PageID # 942.
The parties acknowledge that, whether Hertz foresaw or should
have foreseen the danger to Howard is a matter that must be
viewed from the perspective of Fernandez, Akina's supervisor.
See id., PageID #s 942-55; ECF No. 103-1, PageID #s 745-54.

Howard argues that Fernandez should have foreseen the
harm he suffered because she was aware of a prior, "nasty and
demeaning" post that Akina had made about another Hertz customer.
See ECF No. 106, PageID # 943.

To satisfy its initial burden as a movant under Rule
56(c), Hertz presents specific evidence that Fernandez was
unaware of any prior posts Akina may have made about a customer.
See ECF No. 103-1, PageID # 736.  Hertz points to Fernandez's
declaration, which states, "Before February 28, 2012, I had no
reason to anticipate that Akina would make the kind of Facebook

9

post or comments that he made about Howard." ECF No. 106-9, PageID # 991. Fernandez also states, "At no point was I informed or [did I] learn of any other Akina posts regarding Hertz, its employees, or its customers, with the exception of the post regarding Howard that Howard showed me on February 28, 2012" and Akina's post about her in 2009 or 2010. Id.

Hertz also contends that none of the evidence cited by Howard to show that Fernandez knew, or had reason to know, of this prior post, actually accomplishes that task. See ECF No. 110, PageID #s 1030-31. This court agrees. Although Howard offers evidence of the prior post about a customer, see ECF No. 106-2, PageID # 958, critically, none of the individuals Howard relies on in that regard suggests that the prior post was brought to Fernandez's attention before Akina posted his comments about Howard. Faaniniva Bermudez, who notified Fernandez about the Akina post that made light of Fernandez, testified that she never notified Fernandez about any prior posts Akina had made about customers and was not even aware of such prior posts. See ECF No. 106-7, PageID # 984 (Q: . . . you don't have any memory of any other Facebook posts of Akina that you discussed with Ms. Fernandez other than the tree post we've talked about? A: I believe so, yes."). Pomale, the person who informed Howard of Akina's post about him, acknowledged in a declaration that she "did not speak or otherwise communicate with any manager or

10

supervisor at Hertz at any time about anything that Akina posted
or said in a comment on Facebook."  ECF No. 106-6, PageID # 982.
Nor does Howard's own declaration contain any statements showing
that Fernandez knew of Akina's prior customer post.

Howard, unable to offer direct evidence that Fernandez
was aware of the prior customer post, instead argues that "the
evidence suggests that it was likely [Fernandez] did know because
employees did."  ECF No. 106, PageID # 943.  Howard adds that
Fernandez's knowledge is evidenced by Pomale's statement that "I
also seem to recall hearing people who worked at the Hertz
Airport location knew about it, that Akina had posted negatively
about a customer."  ECF No. 106-2, PageID # 958.  Pomale says
nothing specific about what Fernandez knew.

Although Howard is entitled to all reasonable
inferences as the nonmovant at summary judgment, see, e.g., T.W.
Elec. Serv., Inc., 809 F.2d at 631, it is not reasonable to infer
on this record that Fernandez knew about the prior post just
because other employees did.  The record is replete with evidence
that employees like Pomale, Chun, Huard, Cabebe, and Bermudez
knew about Akina's posts because, as his Facebook "friends," they
had direct access to his posts.  See ECF No. 106-9, PageID # 990;
Page ID # 984 (Q: . . . at that time were you friends with Shawn
Akina on Facebook?  A: Yes.  Q: Okay.  So if he posted something
. . .  A: I would be able-yes.  Q: You'd be able to see it?  A:

11

Yes." (ellipses in the original)); ECF No. 104-7, PageID # 906.
Fernandez, by contrast, had no Facebook account and could not
view Akina's posts on her own.  See ECF No. 104-5, PageID # 878
("I did not have a personal Facebook account at any time while I
was the Maui Airport Manager").  That some of Akina's peers knew
of his alleged posts about customers does not create a genuine
issue of material fact as to whether Fernandez, his supervisor,
also knew of such posts.

Howard also contends that the harm he suffered was
foreseeable to Fernandez, given her awareness of a prior post
Akina had made about her.  See ECF No. 106, PageID # 943.  This
argument is unpersuasive.  Akina's prior post involved his
observation that Fernandez had absent-mindedly almost walked into
a coconut tree.  See ECF No. 104-5, PageID # 877.  Fernandez
unsurprisingly considered the post to be "fairly innocuous,"
rather than "threatening any harm to [her], or containing any
comments about race or sexual orientation."  Id.  That post was
in 2009 or 2010, and Fernandez had counseled Akina at that time
that "he must not post anything on Facebook regarding Hertz."  He
told her that "he understood and would not make any such Facebook
posts in the future."  Id., PageID #s 877-78.  However imprudent
the prior post may have been, its content gives no indication
that Akina would later make a racist, homophobic, or threatening
post about a customer, or that he would post financial nonpublic

12

information about a customer.  Two or three years elapsed between
the post about the tree and the post about Howard, making the
likelihood of Akina's offensive post about Howard difficult to
foresee.  The post about the tree did not give rise to a duty on
Hertz's part to prevent the harm that eventually occurred.

Akina's post, and many of the follow-up comments, were
indisputably despicable.  The statements on Facebook included
confidential financial information, made light of violence, used
a racist term, and ridiculed Howard's sexual orientation.  None
of this was lost on Fernandez and Hertz, who responded by
disciplining those involved.  Akina, Huard, Chun, and Cabebe were
either terminated by Hertz or resigned.  See ECF No. 106-9,
PageID # 991.  That said, Howard has not demonstrated the
existence of a genuine issue of material fact that Fernandez or
Hertz foresaw or should have foreseen the danger posed by Akina
and should have been more closely supervising his Facebook use
earlier or should have fired him earlier.

Hertz did have a handbook that addressed safeguarding
customer information.  See ECF No. 106-11, PageID # 1003.  The
handbook included a discussion of employment practices of
nondiscrimination and a lack of tolerance for violence.  See id.,
PageID #s 1004.  While Hertz therefore could be said to have
recognized these dangers, the law does not impose strict

liability on an employer every time an employee steps out of line.

For Howard to establish a tort duty under Hawaii law, it is not enough to point to the handbook as evidence that Hertz foresaw the danger of disclosing private customer information. Hawaii's courts have made clear, "The concept of 'duty,' however, involves more than mere foreseeability of harm."  Pulawa, 112 Haw. at 13, 143 P.3d at 1215 (brackets omitted) (Taylor-Rice v. State, 91 Haw. 60, 71-72, 979 P.2d 1086, 1097-98 (1999)); Crivello v. Cnty. of Hawaii, No. 29502, 2011 WL 39082, at *4 (Ct. App. Jan. 6, 2011).  "The imposition of a duty rests not only on the concept of foreseeability, but on policy considerations." Crivello, 2011 WL 39082, at *5 (citation omitted).  Those considerations include "the policy of preventing harm, the extent of the burden to the defendants and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved."  Pulawa, 112 Haw. at 12, 143 P.3d at 1214.

For claims of negligent supervision and negligent retention, the relevant inquiry is whether the employer knew or should have known of the danger posed by the particular employee who caused the injury.  See, e.g., Henderson v. Prof'l Coatings Corp., 72 Haw. 387, 397, 819 P.2d 84, 91 (1991); Abraham v. S. E.

14

Onorato Garages, 50 Haw. 628, 632, 446 P.2d 821, 825 (1968) ("In order to recover on the theory of negligent promotion there must be a showing that the employer knew or should have known that the employee was incompetent or unfit to perform the job to which he was promoted."). Hawaii's courts have attempted to ensure a "reasonable and proper limitation of the scope of duty of care, [such that an employer would not] be confronted with an unmanageable, unbearable and totally unpredictable liability." See Janssen, 69 Haw. at 35, 731 P.2d at 166.

Suppose, for example, that an employer knew that one of its employees once used a work phone to make fun of a co-worker. If that employee, with no history of discriminatory behavior, one day got upset at a customer and berated him over the phone in a racially offensive manner, Hawaii law would not deem the employer liable for the customer's injury just because the employer knew the employee had once used the phone in an unrelated way or because the employer knew generally that employees might one day misuse the phone in other ways.

The court is not, of course, suggesting that Hertz is liable only if it knew or should have known of the precise nature of the statements Akina made. The court is saying instead that Hertz's acknowledgment of possible dangers in its handbook does not suffice by itself to establish a duty of care running from Hertz to Howard. It is reasonable and proper for employers to

warn against possibilities, but nothing in Hawaii law equates the recognition of possibilities, without more, with the establishment of a duty.  Here, the only "more" is Akina's Facebook posting some years earlier about seeing Fernandez nearly walk into a tree.  Howard's argument would require employers to monitor every statement by every employee, as discriminatory statements might be made in person, over the phone, over the internet, and in letters or other written materials.  This is an impossible burden.

In the absence of a duty to protect Howard from Akina's post, Hertz is entitled to summary judgment on Howard's claims for negligent supervision and negligent retention.  Having granted summary judgment on these grounds, this court need not address the other elements of these claims.

### B.    Negligent Training.

Hertz is also entitled to summary judgment as to the negligent training claim because Hertz owed Howard no duty of care relevant to his claim.  This court addresses the negligent training claim separately because the analysis with respect to duty differs somewhat from the duties related to the negligent supervision and negligent retention claims.

Hawaii appellate law has not explicitly defined the contours of a negligent training claim.  This court therefore turns to other jurisdictions for guidance on this issue.

16

Takahashi v. Loomis Armored Car Serv., 625 F.2d 314, 316 (9th Cir. 1980) (lacking controlling state law, a "federal court sitting in diversity must use its own best judgment in predicting how the state's highest court would decide the case.  In so doing, a federal court may be aided by looking to well-reasoned decisions from other jurisdictions").

Other jurisdictions note that an employer has a duty to train an employee when a particular job task poses a foreseeable risk of harm if performed without adequate training.  See, e.g., Adler v. WestJet Airlines, Ltd., 31 F. Supp. 3d 1381, 1388 (S.D. Fla. 2014) ("A plaintiff asserting a negligent training claim must allege that it was harmed as a result of an employer's failure to adequately train an employee, and that the nature of the employment put the plaintiff in a 'zone of risk' such that the employer had a duty running to the plaintiff."); Finkle v. Regency CSP Ventures Ltd. P'ship, 27 F. Supp. 3d 996, 1000 (D.S.D. 2014) ("A negligent training claim suggests that the manner or circumstances of the employee's training by the employer inadequately or defectively coached, educated, or prepared its employees for the performance of their job duties."); Garcia ex rel. Marin v. Clovis Unified School Dist., 627 F. Supp. 2d 1187 (E.D. Cal. 2009) (requiring plaintiff who alleges negligent training under California law to show that employer negligently trained employee as to performance of

employee's job duties and that such negligent instruction caused plaintiff to suffer injury or damage as a result of employee's carrying out of job duties); Focke v. U.S., 597 F. Supp. 1325, 1347 (D. Kan. 1982) ("Depending upon the particular job in question, it seems incumbent upon the employer to provide a reasonable amount of training to an employee so as to allow him to carry out his duties without endangering either himself, fellow employees or third persons.").

Thus, for example, an employer has been said to have a duty to train a security guard in how to apprehend a suspected shoplifter. See Miller v. Wal-Mart Stores, Inc., 580 N.W.2d 233, 238 (Wis. 1998) ("[L]oss prevention employees are entrusted with special duties and given authority to stop individuals suspected of shoplifting. Because it is foreseeable that if not properly trained, a loss prevention employee could cause harm to someone, we believe that Wal-Mart has a duty of care toward its patrons."). Similarly, employers have been held to have duties to train social workers in the handling of psychiatric patients, see Focke, 597 F. Supp. at 1347, drivers of company vehicles, see Finkle, 27 F. Supp. 3d at 1000, and airline staff who transport disabled passengers, see Adler, 31 F. Supp. 3d at 1388. These cases make it clear that a plaintiff may not simply assert that an employer has a general duty to train its employees. To hold

18

otherwise would require employers to become insurers against all dangers caused by their employees, whether foreseeable or not.

Doe Parents No. 1 v. State, Dep't of Educ., 100 Haw. 34, 58 P.3d 545 (2002), suggests that Hawaii, like the jurisdictions identified above, will impose a duty to train only in connection with a specific job duty.  In that case, the State was found liable for having negligently trained a school principal in the handling of allegations of sexual abuse by a teacher.  Id. at 91, 58 P.3d at 602 (Acoba, J., concurring).  The court recognized that the State owed a duty to public school students and their parents to provide "training and/or implementation of standards regarding allegations of sexual abuse, including the interview by [the principal] and the failure to notify the children's parents regarding the potential abuse." Id.  The basis of the duty was the notion that the State knew or should have known that its failure to adequately train the principal in the performance of these particular job duties created a foreseeable risk of harm to the students and their parents.  The court concluded that the negligent training claim properly rested on the performance of a specific job duty that posed a foreseeable risk of harm when performed without proper training.

With these principles in mind, this court turns to Howard's negligent training claim.  Howard fails on several

attempts to establish that Hertz owed him a duty to train its employees. First, Howard argues that "Hertz has a duty to properly train its employees to conduct themselves in a lawful manner in their interactions with their customers and the public." See ECF No. 126, PageID # 1140. The duty, as articulated, fails to identify any specific aspect of Akina's, Fernandez's, or any other Hertz employee's job that poses a risk of danger to Hertz customers as a result of Hertz's failure to train. Indeed, the duty articulated by Howard would require Hertz to train its employees to avoid all unfavorable interactions with or relating to customers. See ECF No. 126, PageID # 1140. Howard's reference to "a lawful manner" appears to encompass the requirement that employers avoid all behavior that might even arguably be tortious. An employee's display of mere impatience might, under Howard's definition, support a claim that an employer's negligent failure to train the employee caused a sensitive third party to suffer emotional distress. Imposing such a burden would contravene the basic principle with respect to negligence that a defendant only has a duty of care to protect against reasonably foreseeable harm. See, e.g., Pulawa, 112 Haw. at 12, 143 P.3d at 1214 ("if it is not reasonably foreseeable that the particular plaintiff will be injured if the expected harm in fact occurs, the defendant does not owe that plaintiff a duty reasonably to prevent the expected harm" (quoting Doe

<u>Parents</u>, 100 Haw. at 72, 58 P.3d at 583)).  Such a limitless duty cannot serve as the basis for a negligent training claim.

Howard also argued, at the hearing on the motion, that Hertz had a contractual duty to train that gave rise to its tort duty to train.  According to Howard, the contractual duty arose out of a letter written by Hertz's CEO to its employees, stating that "[Hertz's] commitment to [its employees] is to offer periodic training so that [they] better understand the requirements [of Hertz's handbook]."  ECF No. 106-11, PageID # 995.  Howard explained:

> Well, the only reason why I impute a [tort] duty [to train] is because of what [Hertz's CEO said in] his letter to all employees.  I mean when the head of all heads says this is the way it should be and makes his employees sign a document attesting that they will adhere to that and then it's not adhered to I think that is right there there's some negligence if [Akina's supervisor, Fernandez, is] not paying attention to what the boss says.

Howard added that he was a third-party beneficiary of this purported contract between Hertz and its employees, thereby transforming the alleged contractual duty between employer and employee into an independent tort duty running to him.

Howard's argument fails as a matter of law.  Howard ignores the distinction between tort and contract, which have differing purposes that give rise to differing duties.  See <u>Foley</u>

21

v. Interactive Data Corp., 765 P.2d 373, 389 (Cal. 1988).  As the

Seventh Circuit notes:

> [T]he source of the duty in tort and contract
> differs.  In tort the law prescribes the
> duties members of society owe to one another
> and establishes remedies for their breach.
> In contract the source of the duty is the
> consent or promise of the contracting
> parties, who order their own relationship.

Lyon Fin. Services, Inc. v. Illinois Paper & Copier Co., 732 F.3d

755, 764 (7th Cir. 2013), certified question answered, 848 N.W.2d

539 (Minn. 2014) (citing Restatement (Second) of Torts § 4 cmt.

c)); see also Ass'n of Apartment Owners of Newtown Meadows ex

rel. its Bd. of Dirs. v. Venture 15, Inc., 115 Haw. 232, 277, 167

P.3d 225, 284 (2007), as corrected on denial of reconsideration

(Sept. 20, 2007) ("Contract law is designed to enforce the

expectancy interests created by agreement between the parties and

seeks to enforce standards of quality.  This standard of quality

must be defined by reference to that which the parties have

agreed upon.  In contrast, tort law is designed to secure the

protection of all citizens from the danger of physical harm to

their persons or to their property and seeks to enforce standards

of conduct.  These standards are imposed by society, without

regard to any agreement.").

Admittedly, there are limited situations in which a

tort duty may arise out of a contract.  There is, for example, an

insurer's duty to settle a claim in good faith.  See Enoka v. AIG

Hawaii Ins. Co., Inc., 109 Haw. 537, 549, 128 P.3d 850, 862
(2006), as corrected (Feb. 28, 2006).  However, Howard does not
show that any analogous situation is present here.  Even if
Howard did establish that Hertz owed its employees a contractual
duty to train, this does not translate into a tort duty to train
that runs to Howard.[2]

Howard also argues that a duty to train arises by
virtue of his being in a "special relationship" with Hertz as its
"business visitor," pursuant to the Restatement (Second of Torts)
§§ 314(a)(3) and 332(3).  See ECF No. 126, PageID # 1139.
Section 314(a) provides that a possessor of land who holds it
open to the public is under a duty to members of the public who
enter in response to his of her invitation to "take reasonable
action (a) to protect them against unreasonable risk of physical
harm, and (b) to give them first aid after it knows or has reason
to know that they are ill or injured, and to care for them until
they can be cared for by others."  Section 332(3) defines a
"business visitor" as "a person who is invited to enter or remain

_____

[2] Because the court rejects Howard's argument that the
alleged contractual duty establishes the necessary tort duty, it
need not address the other factual and legal issues Howard would
have to prove to establish that a contractual duty to train
extended to Howard, including whether: 1) the CEO's letter or the
"Acknowledgment and Certification" constitutes a contractual
requirement that Hertz will train its employees with respect to
the use of social media; and 2) whether the alleged contractual
duty was intended to benefit customers like Howard as third-party
beneficiaries.

on land for a purpose directly or indirectly connected with business dealings with the possessor of the land."

This court finds no case in Hawaii, and Howard fails to point to any, that imposes this duty in cases like Howard's.  The Hawaii cases this court is aware of all imposed a duty to protect a business visitor against the risk of physical harm occurring on the premises.  See, e.g., Winfrey v. GGP Ala Moana LLC, 130 Haw. 262, 308 P.3d 891 (2013); Touchette v. Ganal, 82 Haw. 293, 922 P.2d 347 (1996).  Howard has not alleged, let alone shown, that he was physically injured on Hertz's premises as a result of Akina's or anyone else's conduct.  Instead, he alleges psychological injuries that, even if they are accompanied by physical symptoms, are distinguishable from direct injuries occurring while a person is on another's premises.

Even if Hertz was under a duty to train Akina and others to prevent the harm allegedly suffered by Howard, Howard provides no evidence that such a duty was breached.  According to Fernandez, she instructed Akina in 2009 or 2010 not to post anything related to Hertz on Facebook, and Akina told Fernandez he understood and would not post anything in the future.  See ECF No. 104-5, PageID #s 877-78.  Howard makes no attempt to describe what additional training Hertz should have provided.

## C.   Howard Is Not Entitled to Additional Time for Discovery.

As an alternative to granting summary judgment in favor of Hertz on the present record, Howard asks the court to allow him "additional time to complete taking critical discovery and obtain additional declarations pursuant to Rule 56(d)(2) especially as the Discovery deadline has not yet passed."  See ECF No. 106-1, PageID # 957.

Howard says:

certain critical subpoenas can and should still be taken that verify allegations set forth in Plaintiff Maurice Howard's . . . pleadings regarding his claims for Negligent Retention, Negligent Supervision and Negligent Training.

. . . .

Howard specifically seeks discovery from Facebook regarding Facebook postings by Shawn Akina.

. . . .

Howard has newly discovered evidence regarding Shawn Akina that he seeks to pursue in Discovery.

ECF No. 106-1, PageID # 957.

A party requesting a Rule 56(d) continuance bears the burden of (1) filing a timely application that specifically identifies relevant information; (2) demonstrating that there is some basis to believe that the information sought exists; and (3) establishing that such information is essential to resist the

25

summary judgment motion.  See Emp'rs Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co., 353 F.3d 1125, 1130 (9th Cir. 2004) (citation omitted); accord Moss v. U.S. Secret Serv., 572 F.3d 962, 966 n.3 (9th Cir. 2009) ("Rule 56([d]) requires a party seeking postponement of a summary judgment motion to show how additional discovery would preclude summary judgment and why it cannot immediately provide specific facts demonstrating a genuine issue of material fact." (punctuation, quotation marks, and citation omitted)).

Howard does not satisfy any of these requirements with regard to the first two forms of discovery (subpoenas and discovery from Facebook).  Howard does not explain what facts the subpoenas may provide or how those facts could demonstrate that there is a genuine issue of fact precluding summary judgment. Nor does Howard explain how discovery from Facebook would show that Fernandez knew of the posts, which is the critical issue with regard to Howard's negligent supervision and negligent retention claims against Hertz.

Hertz has recently turned over to Howard some documents regarding Akina's termination, which Hertz had withheld as privileged work product.  See ECF No. 138.  Having reviewed the documents in camera, the court concludes that they do not preclude summary judgment as to any of Howard's remaining claims. Howard argues that further discovery is warranted, but points to

no specific discovery.  No Rule 56(d) continuance is justified under the circumstances.

Under Rule 56(d), "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: . . . (2) allow time to obtain affidavits or declarations or to take discovery."  The party seeking a Rule 56(d) continuance must demonstrate that it diligently pursued discovery.  See Pfingston v. Ronan Eng'g Co., 284 F.3d 999, 1005 (9th Cir. 2002) ("The failure to conduct discovery diligently is grounds for the denial of a Rule 56(f) motion."); Mackey v. Pioneer Nat'l Bank, 867 F.2d 520, 524 (9th Cir. 1989) ("A movant cannot complain if it fails diligently to pursue discovery before summary judgment."); Conkle v. Jeong, 73 F.3d 909, 914 (9th Cir. 1995) ("the district court does not abuse its discretion by denying further discovery if the movant has failed diligently to pursue discovery in the past").

Howard cannot complain that he needs more time to conduct discovery when he has not shown diligence in seeking that discovery.  Howard filed his original Complaint on November 22, 2013.  See ECF No. 1.  Although the parties agreed for a while to defer discovery, that agreement appears to have ended once the court ruled on an earlier motion to dismiss in October 2014.  See ECF No. 28, PageID # 213; ECF No. 30, PageID # 228.  Howard does not, for example, explain why he did not pursue discovery from or

27

regarding either Facebook or Akina regarding the social media posts in, say, the first half of 2015.  He makes no attempt to justify his delay.  This court decides the present summary judgment motion on the present record.

**V.        CONCLUSION.**

For the reasons stated above, the court grants Defendant's Motion for Summary Judgment.  The Clerk of the Court is directed to enter judgment in Hertz's favor and to close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 25, 2016.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Howard v. Hertz Global Holdings, Inc., et al., Civ. No. 13 00645 SOM/KSC; ORDER GRANTING DEFENDANT THE HERTZ CORPORATION'S MOTION FOR SUMMARY JUDGMENT.